oral argument not to exceed 15 minutes per side. Mr. Fink for the appellant. Good morning. Good morning. Good morning, Your Honors. Judge Gilman, Judge Griffin, it's nice to meet you. Judge Mathis, nice to see you again. Judge Griffin, if I could reserve five minutes for rebuttal, I'd be grateful. I did not tell that, so Madam Clerk, my apologies. Very well. Five minutes rebuttal. Thank you, Your Honor. Your Honors, as instructed by you, Judge Griffin, I'm going to focus on what I find to be the most important, but struggles with or needs clarification obviously is important to me, so please let me know if there's some issues that you'd like addressed. I want to focus on the Bruin and Rahimi issue for a portion of my time. Your Honors, there is no doubt there are some threshold matters that I want to address, so as I do a 30,000-foot overview of our position on this, don't think I'm ignoring the exciting threshold timeliness questions, but I think Rahimi, which hasn't yet been addressed in the briefing in this case, came out after it was fully ... Before you go for it ... Sure. What standard are you asking us to look at this? As preserved, Judge, as de novo. I think that this is a preserved challenge to the constitutionality of the Felony and Possession Statute, both on its face, 922 G1, and as applied to Mr. Burrell. It was untimely, right? Judge Gilman, that's an issue that I think we have to deal with better now than ever. It was denied as untimely, but it was also denied as being against the great weight of the authority by Judge Cleland. Now, the timeliness issue is problematic for a lot of reasons, not the least of which is Bruin was decided after the motion cutoff. In fact, Bruin was decided the same day that the government superseded its indictment to add a Felony and Possession charge, June 22nd of 2022. The good cause, Judge Gilman, for filing a motion to dismiss on September 6th, 70 some days after a monumental shift, I think we can all agree, in Second Amendment jurisprudence. The good cause was self-evident in the motion. It came within a reasonable period of time to understand historical analogs, to become history professors as we're now forced to be under Second Amendment jurisprudence. It filed on September 6th before trial and along with other motions in limine as well as what turned out to be a motion to withdraw, which wasn't denied as untimely by Judge Cleland. And again, what I think is really important is Bruin was decided the same day that a superseding and it was sua sponte by the way, it was the next day after the motion to dismiss was filed, to call the motion untimely based on his original scheduling order over a year earlier. And that has such, you know, I use the word petty in the brief, and I meant that word because there's also a footnote in Judge Cleland's opinion that says they didn't see government concurrence to dismiss their indictment. First of all, the motion to dismiss does comply with the local rules. It does say the government doesn't concur. So not only was it inaccurate, but this notion of trying to insulate an opinion from being decided without the government's response and call it untimely really sought to just deprive the issue of ever being heard. And really, that's kind of the struggle I have with this threshold issue, Your Honors, is one way or another, Mr. Burrell is entitled to have this issue heard. But our question is whether we review it for plain error or whether we review it de novo. If you preserve the issue, we review it de novo. But if you did not, then we review for plain error. It's a much different standard here because it's not quite clear what the law is on this felon possession Second Amendment issue. And because it's not, I'm inclined to say there's not plain error because the law is not clear here. So I think for you to win, I think you have to establish that you preserved it. So I think that the motion to dismiss argument, I think, is probably the most important for you. I'm going to concede this for the practical point of discussing it with you. If I was wearing the robe, I'd probably have the same opinion. And you're going to find support in your most recent opinions for plain error not being something. I think we have already. You have. In an unpublished case, you're going to find support for that concept. And I understand it. The problem... Your motion to dismiss is timely because the law has changed. I know this is a monumental change of the law, but the law changes all the time. And if we were to accept your argument, whenever the law changes at some point later in the future, you can say, well, I can timely move forward now even though I didn't preserve it. I mean, it's always been my understanding you have to preserve the issue whether you think it's a winnable issue right now or not in the hope that the law is actually going to support you down the road before your case is over. What's the best authority that you have that a change of law will preserve an otherwise untimely motion? You know, Judge, I can cite for you and supplement some examples of it. But for now, what I'm going to tell you, the best authority is common sense. You know, in Bruin, Judge, I don't think this is a controversial thing. Bruin completely changed the analysis of how we look at Second Amendment and the fundamental rights. I agree with you there, too. So to predict that, to hope that Bruin is going to be decided a certain way prior to a scheduling order being entered, I can tell you as a practitioner in the trial court, it's virtually impossible. If I were to anticipate grants of certiorari and anticipate a five-to-four decision that completely upended a century of jurisprudence regarding guns, then I think I'd be a lot wealthier than I am if I could predict that. Wasn't Bruin argued in November of the year before? It had been argued. It had been argued and certiorari had been granted. I don't think it was a year before. I think in March of 2022, Your Honor, I want to say that it was argued. But I could be wrong on the dates. But your point is taken. But as long as cert had been granted and argument had actually taken place, so most practitioners in the criminal law area would probably know, hey, there's a chance that the Supreme Court's going to change the Second Amendment law. And this was, therefore, a long time before the motion in this case was actually filed. How many months would that be between argument in the Supreme Court and this motion being filed? Several to be sure. And I appreciate the credit you're giving the defense bar to anticipate these rulings. But Judge Gilman, I got to say, and pushing back on that, to anticipate precisely what the Supreme Court would be looking for, to file a motion that actually has substance and merits, to review the historical analogs and know what the language the Supreme Court is looking for, it's asking too much of an effective assistance to call that the bare minimum for effective assistance. We react and You're right. So how long is it from the filing of the Bruin decision to when the motion was  Judge, it's in my brief. I want to say 76 days. And don't hold it against me if I'm That sounds like that's over two months. I think that is a reasonable amount of time given the Federal Defender's Office back it, given what they are digesting in a decision that's over 100 pages in Bruin. Did the defendant lay out these things that you're talking about now? You know, we needed this time to digest the decision. We don't have this many Federal Defenders. Was that laid out in the motion? It wasn't, Judge. And really never given an opportunity to. And my point to you is, I think the good cause was self-evident from the motion. And for Judge Cleland to a day later What do you mean you weren't given an opportunity to? If Judge Cleland or the government wanted to raise the timeliness issue, I think it should have been done in a way that the defense counsel could have responded. Instead Couldn't a defendant have, instead of just filing a motion to dismiss, file a motion to extend the deadlines or something along those lines before filing a motion to dismiss to lay out the reasons why there was this delay? Sure. In hindsight, Judge, that's probably what should have been done, is in the stipulations that extended the trial date and the stipulation that extended some other dates, should it include an extension of the motion cutoff? But we're getting to the flip side of this, which I don't blame the FDO for this. I want to make clear that my firm position is that it's self-evident from that motion why it could have been filed then. As an alternative, though, I'll say to you, Judge Mathis, in responding directly to that question, if that's what you find, then I think it's very apparent from the record, if you disagree with me, that it's ineffective assistance to counsel then. One way or another, and that's my problem. I don't think in the record that the fellow defender's office had this amount going on and didn't have time. I don't know that that's in the record at this point. And then I'll give you a third alternative, Judge Mathis, and that's a remand to have a hearing on the timeliness issue. Because one way or another, here's my struggle with all these alternatives, and I lay out these alternatives in the brief because I anticipated this struggle. My problem is Mr. Burrell should not be the one that is not heard on this issue. There has to be a function of the court that adheres to this issue, whether that is that this motion was timely and should have been laid out, whether that is that counsel should have filed the stipulation and that was, you know, the bare minimum for effective assistance to counsel, or whether there should be a narrow remand to hold a hearing and decide whether there was good cause and then decide the issue. I'll reserve the balance of this discussion for my rebuttal unless there's any other questions. Thank you. William Valancourt, Appearing on behalf of the United States. I'll start with the Bruin-Rahimi issue that counsel discussed. The motion was dismissed because it was untimely. The answer here is to follow Rule 12. The defendant's argument as to why the district court should have heard this and that it was self-evident and maybe the federal defender office was overwhelmed or trying to figure it out, that was all a motion that could have easily been brought before the district court under Rule 12 to ask the judge to say, we know this issue is untimely, this motion is untimely, but here are the reasons why we believe there is good cause for you to hear it now. And they could have laid out why it took three months after Bruin came down to make the decision to file a motion to dismiss, but there is nothing in the record addressing that point and explaining why there was good cause. Had they made that motion, made that pitch for good cause, and Judge Cleland had said, I don't find there's good cause, then that issue would be before the court and you could determine whether the judge abused his discretion in doing so. But in this case, the defendant completely ignored the fact that his motion was untimely and just filed it. And the judge in his order said, it's untimely, I'm enforcing it. The defendant could have asked for an extension of the Bruin issue or dictates that it's reviewed for plain error. The other thing to remember... What about opposing counsel's point that, well, just common sense tells you it's understandable why it took them 70 days? Well, it's not necessarily common sense because counsel could have been deciding that a motion to dismiss based on Bruin really didn't have any merit. And in fact, just last week, a unpublished panel opinion in this case, in this court, United States v. Philpott, said that a decision not to file a motion to dismiss alleging a Second Amendment violation, it either might have been a mistake or it might have been a strategic decision given adverse precedent. And the panel held that we can't make that determination without any facts. And so they left that for collateral review. And I would submit that that would be the same posture that this court should follow here. If there was a valid reason for them or it was ineffective assistance of counsel and they just dropped the ball, well, then they can raise those facts and raise those issues on collateral review. But perhaps it was, in fact, a strategic decision not to file such a motion because when Bruin came out there, yes, it created an upheaval in Second Amendment law, but it wasn't necessarily clear that it would have an impact on felon and possession. Why would it be a strategic decision not to raise it? I mean, what advantage would there be for the defendant not to raise it? Well, if they conclude they're going to lose. I mean, and at the time, shortly after Bruin came out, there was no precedent indicating that 922G1 was subject to a constitutional challenge, that there was any basis for it. Yes, you could file a motion saying, hey, there's no downside, but they may have decided this is a loser, we're not going to litigate that issue. That would have been a strategic decision for them to make. And whether or not that's a valid... I'm sorry, why would that help them decide not to raise it? Well, I mean, there was also precedent in the Sixth Circuit that says that 922G1 is, in fact, constitutional under the Second Amendment. Under Bruin, right. Well, no, under United States v. Carey. It's a published opinion from this court where this court held that under Heller and the language in Heller about the laws prohibiting felons from possessing firearms, that those are presumptively valid. And the panel in Carey said that we're following that to hold that there is no Second Amendment defect to the felon in possession statute. So that could have been a strategic reason that they may have decided not to pursue the motion. But clearly, that was a significant consideration for the panel in Philpott that they said, we don't really know why. And so that's why that should be left for collateral review. And in this case, though, it's also important that there's two types of challenges to G1. One is a facial challenge and one is an as-applied challenge. On appeal, the defendant argues an as-applied challenge, but that wasn't the motion that they filed in the district court. They simply raised a facial challenge, which as the Supreme Court pointed out in Rahimi, is among the most difficult challenges to make. And in fact, the court denied or upheld the statute in Rahimi partially because they said, well, we can find a constitutional application, so there's not a basis for a facial challenge. But nothing in Rahimi would have affected the decision as to whether or not G1 is unconstitutional. In fact, as the Philpott panel also stated, that Rahimi in no way suggests that it's plain error to let a 922 G1 conviction stand. So the Rahimi issue, the Bruin issue, is unpreserved because the district court properly denied it as untimely, and then it's partially unpreserved as an as-applied because they never made the as-applied motion to the district court. So on that basis, there's no basis for relief because as Judge Griffin pointed out, clearly it's not a plain error, that there's no relief for plain error, and that would be consistent with this panel's decisions, or this court's published opinions, and Johnson and Alvarado, that there is no plain error, there is no basis for plain error review for a 922 G1. Now one thing the court could do is there is a preserved claim of a Bruin issue that is pending before this court in United States v. Goins. That's case number 235848. It's been argued. It's been submitted. It's a waiting decision. That could obviously have an impact on at least establishing what the law is and whether Kerry is valid, remains to be valid, but that would be an option for the panel is to wait and see what happens there. As to the remaining issues, I did file 28 G letters regarding two recent opinions that were issued after the briefs were filed in this case involving the search warrant issues, the en banc opinion in United States v. Sanders, which addressed both the nexus and the good faith exception issues, as well as the published opinion in Neal. I think following those cases make this a straightforward case. If there are no further questions, I'd ask the court to affirm the judgment of the district court. Thank you. Five minutes rebuttal, Mr. Fink. Thank you, Judge Griffin. My dear friend, Mr. Valencourt, said it wasn't necessarily an oral argument just now. It wasn't necessarily clear the impact on the felon in possession law. Exactly. Exactly the point of why it took thoughtfulness to file this motion after digesting and understanding Bruin and its impact. That's precisely what I'm saying, and what I find ironic, if not for a better term, is the very first time any substance in this case about Bruin has been argued, it was just argued for the first time on appeal. Kelly, all of these arguments about the substantive issue of whether or not felon in possession law should survive was never argued. So they've banked their entire success on this appeal on timeliness, because it's their burden, unless there's a remand, of course, where you have this litigated, but it's their burden to establish the historical analog. It's not for the courts, it's not for me and Mr. Burrell, it's for the government to establish that there is a historical analog to support the felon in possession law. They haven't even tried. Right. It does strike me, though, I think your opposing counsel makes a valid point, that though at the time the defense files this motion to dismiss, it knows the motion's untimely, based on the district court's deadline, and yet didn't ask for an extension or permission or allege good cause for the delay. Let me push back on that, Judge, just as a practical matter of practice in the district courts. There were two other motions that were heard in the same time frame, a motion in limine regarding evidence and a motion to withdraw as counsel, which was granted. No one raised timeliness, not the district court, not the government, only on this issue. The notion that somehow this is fundamentally different from a motion in limine about evidence that can be brought after the motion to guideline is really a distinction without a difference. I mean, this is a threshold issue about evidence that will be admitted at trial, evidence of a firearm. An entire count, as opposed to an entire charge, as opposed to a motion in limine, we're just talking about the evidence that's going to be presented at trial. I just see those as totally different. Well, I get it, Judge. My point is in response to the idea that somehow, you know, the FDO is mistaken and not directly confronting this head on, the original motion cutoff. My point is, you know, this was never raised with a motion to withdraw. That's not a motion in limine. This was never raised in the motion in limine. Which side wanted counsel to withdraw? The FDO ended up withdrawing and the trial got delayed again for a later trial date. And that, you know, when that, that wasn't opposed by the government and certainly timeliness wasn't raised by the trial court. Trial court was very worried about it being two weeks before trial when this motion was  Trial court respectfully wasn't very worried about it being two weeks before trial when he asked for new counsel. That's the problem I have, Your Honors. I understand that trial courts have a docket. I understand that sometimes there's a desire to decide things on narrow grounds or tough issues that sometimes it's hard to decide. This one made total sense from the, from the face of the motion as to why it was filed and what the issues were. And they're distinct important issues that should have been decided and they could have been. Instead, Judge Cleland took it upon himself to call it untimely without the government's even input or have any hearing so we have any record to decide it. The good news is we have precedent now, not only in our district, but others to, for this court to make a determination of whether the felon in possession statute, either on its face or as applied to Mr. Burrell, is constitutional. And I would recommend this court adopt United States v. Williams and Judge Levy's opinion from the Eastern District of Michigan as the framework for its. The reason, in my view, that the government has not really briefed the substantive issue of whether there's a historical analyzed, analog that justifies the permanent disarmament of felons is because there aren't historical analogs, certainly not ones that fit after Rahim. The Goins case may answer your, the issue now if we sit on that till Goins. I want this panel to decide it. Well, maybe, although you don't, you take your chances. You don't know. We may be worse than the Goins panel. No, I'm confident in this panel. Let's beat them to the, let's beat them to the punch. No, Your Honor, no, I understand that. But my point is, is Mr. Burrell really was never heard on this. And you know, Rahimi answered questions for us. It told us that he is part of the people under the Second Amendment. That's no longer an issue. The only issue here is whether there's anything to support a permanent, forever ban on possession of a firearm. And from 1602 up through the ratification of the Second Amendment and its adoption, there are none. So I ask the court give, whether it's by remand or on substance, allow this issue to be heard from Mr. Burrell. And if there's not any questions, I'll conclude with that. Any further questions? Judge Gilman. All right. Thank you, Mr. Feinstein. Nice to see you, Your Honors. Thank you. The case will be submitted. I believe that concludes our oral argument doc for this morning. And with that, you may adjourn the court.